EVA RAMOS GÓMEZ, Plaintiff and Appellee, v. PEDRO GARCÍA ET AL., Defendant and Appellant.

No. 8786. Argued July 6, 1943.—Decided July 21, 1943.

*Hugh R. Francis* and *Federico J. Pérez Almiroty* for appellants.
*Celestino Iriarte, F. Fernández Cuyar,* and *H. González Blanes,*
for appellee.

Mr. Justice Snyder delivered the opinion of the court.

On November 30, 1941 the plaintiff, Eva Ramos, went riding with Rafael Rodríguez on his two-seater motorcycle. He drove the motorcycle and she rode on the rear seat. They were accompanied by two other couples similarly riding on motorcycles. About 5 P. M., on their return trip, Rodríguez's motorcycle was parked, facing San Juan, near the Brugal Distillery, to wait for one of the motorcycles which had apparently run out of gas. While the plaintiff and Rodríguez were sitting on their motorcycle, with their feet on the ground to retain their balance, a bus, owned by codefendant García, was proceeding in the same direction —that is, toward San Juan. As the bus approached the motorcycle, a private car appeared, travelling in the opposite direction; namely, from San Juan to Bayamón. Apparently believing he would be able to drive through the space between the oncoming automobile and the parked motorcycle, the driver of the bus continued to drive at high speed without blowing his horn. The right rear end of the bus struck the motorcycle, throwing Rodríguez and the plain-

tiff into the mud on the side of the road, injuring them, and rendering the plaintiff unconscious.

The lower court found that the driver of the bus had been negligent "(a) in trying to pass the motorcycle at the moment another vehicle was approaching on the other side of the road, forcing him to pass so close to the motorcycle that when he tried to straighten out the bus in order to continue on his way, the bus collided with the motorcycle, striking violently with its right rear end the left handle of the motorcycle; (b) in not reducing the speed of the bus while passing the motorcycles; and (c) in not blowing his horn in order to give notice to the driver of the motorcycle that he was going to pass". As a consequence, judgment was entered for the plaintiff as follows:

| | |
|---|---:|
| Medical fees (Dr. Casanova) | $ 200. 00 |
| Medical fees (Dr. del Toro) | 2. 50 |
| For injuries and physical and mental suffering | 2500. 00 |
| Loss of earning capacity | 500. 00 |
| | $3202. 50 |

Attorney's fees in the amount of $150 and the costs were also awarded to the plaintiff. The defendants appealed from this judgment, whereupon the plaintiff moved to dismiss the appeal as frivolous.

The defendants made little effort to contradict the testimony establishing the above facts. At the most, the defendants attempted to show that Rodríguez had just started his motorcycle and had run into the bus. But the district court did not believe this testimony, and the testimony which the lower court did believe amply sustains the judgment. In a somewhat similar case, this court held—we quote the headnote—"Where, as a result of the negligence of the driver of a bus in attempting to pass another car at a time when a truck was approaching in the opposite direction, the bus scrapes against the truck, and a passenger

on the bus is injured, the collision, no matter how slight, gives rise to liability." (*Cruz* v. *White Star Bus Line, Inc.*, 46 P.R.R. 420). See also, *Claudio* v. *Delgado,* 44 P.R.R. 730.

■ The defendants press the point that the plaintiff and Rodríguez were engaged in a joint venture when the accident occurred, and that Rodríguez's negligence should therefore be imputed to the plaintiff. It is exceedingly doubtful if the doctrine of joint venture is applicable to the facts of the instant case (See *López* v. *American Railroad Co.,* 50 P.R.R. 1, 23; *Pacheco* v. *Pomales,* 55 P.R.R. 333; *Príncipe* v. *American R. R. Co. of P. R.,* 22 P.R.R. 282). But we need not determine that point, as the lower court found that Rodríguez was not negligent, and we see no reason to disturb that conclusion. We therefore never reach the question of imputing Rodríguez's negligence to the plaintiff.

■ Other alleged errors are equally trivial. It was not improper to award $200 as medical fees to a doctor who served in a public hospital (*Vega* v. *American R. R. Co. of P. R.,* 57 P.R.R. 365). And the lower court did not err in awarding the plaintiff attorney's fees merely because the plaintiff's claim was somewhat in excess of the amount of the damages actually awarded (*Mercado* v. *American R. R. Co. of P. R.,* 61 P.R.R. 222).

■ The defendants finally complain of the award of of $2,500 as damages and of $500 for loss of earning capacity. The injuries received by the plaintiff, as correctly described in the plaintiff's motion to dismiss,[1] which is set

---

[1] The plaintiff was a seamstress who earned from ten to twelve dollars a week at that trade, which particularly requires use of the arms. She suffered one of the most complicated and difficult of fractures, a comminuted fracture of the spiral type at the surgical top of the left humerus, a perifragmental fracture, that is to say, the bone was broken in various fragments. She suffered exceedingly for a long time, and Dr. Casanova Díaz, a specialist in surgery and head of the surgery department at the Bayamón District Hospital, asserts that he can state *with certainty* that this form of fracture is very painful. 'It really was a problem', the doctor testified. (Trans. of Ev., p. 24). A metal splint was used, a triangle made of metal which pressed close

forth in part in the margin, were such that we find no abuse of the discretion vested in the lower court in this respect. See *Font* v. *Viking Construction Corp.*, 58 P.R.R. 691; *Torres* v. *Fernández*, 56 P.R.R. 459, 472.

The motion to dismiss the appeal as frivolous will be granted.

Mr. Chief Justice del Toro and Mr. Justice Travieso did not participate herein.

to the body, 'an adjustable ferule in the shape of a triangle' tied to the body by leather straps, and she had to suffer this torment for five weeks, tied around her breast and over her shoulder by leather straps, not being able to sleep or to move, causing her profound pain, because it was necessary 'to try to put together the particles of bone which are loose'. (Trans. of Ev., p. 26). The accident caused cerebral shock which in turn caused a great amount of vomiting. She also suffered a large bruise on the head, in the left temporal region, and a wound an inch and a half long on the skull. She also suffered a very large bruise on the left eye, which was the cause of hemorrhage and great swelling, in addition to strong headaches, and even on the day before the trial the black eye was still visible. (Trans. of Ev., p. 31). As to her arm, the doctor stated that it is not at present in the same condition it was before the accident, even though the physiological position has not changed, and he also stated that in a person of the age of plaintiff (37 years) a fracture of this kind has worse results than in a younger person.

"The plaintiff testified that even at present she cannot see well through her left eye, that she has to overwork and strain her eyes, and that before the accident she saw perfectly well through her left eye. Due to her occupations she has to sew considerably, and for this purpose she has to strain her eyes very much, which she did before without fear or inconvenience, but now this is the cause of headaches and pain in her head, for which reason she is not able to sew even a fourth of what she used to do. She previously earned from ten to twelve dollars a week; now she earns only from three to four dollars a week."